NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MARVIN MAYS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 05-1463 (GEB) |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| CMS, INC., et al., ) | |
| ) | |
| Defendants. ) | |

**<u>BROWN, Chief Judge</u>**

This matter comes before the Court upon the Motion for Summary Judgment of Defendants Correctional Medical Services, Inc. ("CMS"), Doctor Paul Talbot ("Talbot"), Doctor Lawrence Donkor ("Donkor"), Doctor George Achebe ("Achebe"), Nurse Mary Amato ("Amato"), and John Does 1-20 ("John Does") (collectively, "Defendants"). The Court has decided the motion based on the parties' submissions and without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court will grant Defendants' Motion for Summary Judgment.

**I.  BACKGROUND**

Plaintiff Marvin Mays was, at all times relevant to this matter, incarcerated in a New Jersey state correctional facility. (Def. Br. at 7; Compl. ¶ 9.) Plaintiff alleges that he has been diagnosed with Human Immunodeficiency Virus ("HIV") and that he suffers from neuropathy. (Compl. ¶¶ 1, 18, 26.)

Defendant CMS is a private medical facility that dispenses medical care to state inmates.

(Compl. ¶ 10; Def. Br. at 30.)  Doctors Talbot, Donkor and Achebe are medical practitioners involved in the treatment of Mr. Mays. (Compl. ¶¶ 11-13.)

- Dr. Achebe first examined Mr. Mays for symptoms related to his HIV infection on September 4, 2000, and continued treating him until February 21, 2005. (Def. Br. at ¶¶ 6-75; Pl. Opp'n at ¶¶ 6-75.)

- Dr. Talbot first examined Mr. Mays for pain in the back of his legs and feet on August 19, 2003, and continued to treat him for a variety of other ailments until June 21, 2004.  (Def. Br. at ¶¶ 76-82; Pl. Opp'n at ¶¶ 76-82.)

- Dr. Donkor first examined Mr. Mays for acute bronchitis on September 14, 2004. (Def. Br. ¶ 102; Pl. Opp'n ¶ 102.) Dr. Donkor examined Mr. Mays on a number of other occasions, and for a variety of other ailments, until January 18, 2005.  (Def. Br. at ¶ 102; Pl. Opp'n at ¶ 102.)

- Nurse Amato did not provide any medical care to Mr. Mays, but responded to two Administrative Remedy Forms submitted by Mr. Mays in 2004.  (Def. Br. at ¶ 112; Pl. Opp'n ¶ 112.)

On March 16, 2005, Mr. Mays filed a Complaint in this Court claiming that he received inadequate medical treatment for the above-referenced conditions at the hands of Defendants during his incarceration. (Compl. ¶¶ 49-58.)  Mr. Mays' Complaint included medical malpractice and negligence claims against Defendants, as well as Section 1983 claims predicated on conduct allegedly rising to the level of cruel and unusual punishment under the Eighth Amendment.

On April 24, 2006, this Court dismissed Plaintiff's medical malpractice and negligence claims against Defendants.  On September 22, 2006, Defendants filed a motion for summary

judgment on Plaintiff's Section 1983 claims.

## II.   DISCUSSION

### A.   STANDARD

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hersh v. Allen Prod. Co.*, 789 F.2d 230, 232 (3d Cir. 1986). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor). In deciding whether triable issues of fact exist, the court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995); *Hancock Indus. v. Schaeffer*, 811 F.2d 225, 231 (3d Cir. 1987).

### B.   APPLICATION

Under 42 U.S.C. § 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's

3

> judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.  As noted above, Mr. Mays bases his Section 1983 claim on alleged violations of his Eighth Amendment rights.  Defendants, however, contend that Plaintiff has failed to raise a genuine issue of material fact that his constitutional rights were violated.  Defendants conclude that their motion for summary judgment should be granted, and that Mr. Mays' Section 1983 claims should be dismissed.  The Court agrees.

"The elementary principles of the Eighth Amendment 'establish the government's obligation to provide medical care for those whom it is punishing by incarceration.'" *Frierson v. Green*, No. 04-4295, 2006 U.S. Dist. LEXIS 58495, at *6 (D.N.J. Aug. 21, 2006), *quoting Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  The Supreme Court in *Estelle* set out a two-prong test in assessing whether a provider of medical services violated the Eighth Amendment rights of a prisoner in need of medical care, requiring a showing "(1) that the prisoner's medical needs are serious; and (2) that the defendants showed deliberate indifference to those needs."  *Christy v. Robinson*, 216 F. Supp. 2d 398, 412 (D.N.J. 2002), *citing Monmouth Couty v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987), *cert. denied* 486 U.S. 1006 (U.S. May 16, 1988) (No. 87-1431); *see also Frierson*, at *6 ("In Estelle, the Supreme Court concluded that deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment.") (quotations omitted), *quoting Estelle*, at 104.

"For a medical need to be 'serious' pursuant to the [first] prong of the *Estelle* test, Plaintiff must show that the need is 'one that has been diagnosed by a physician as requiring

treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *Frierson*, at *8, *quoting Estelle,* at 347; *see also Pace v. Fauver*, 479 F.Supp. 456, 458 (D.N.J. 1979). As to the second prong, this Court has held that "where prison authorities are aware of the need for medical care and intentionally refuse to provide that care, the deliberate indifference standard is satisfied." *Frierson*, at *8, *citing Monmouth County*, at 346.

Estelle should not be read, however, to mean "'that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Frierson*, at *7, *quoting Estelle*, at 105. Indeed, "[p]rison medical providers are given considerable latitude in their medical treatment of prisoners, as long as there is no deliberate indifference to a serious medical need." *Frierson*, at *7, *citing White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990). "Neither mere allegations of malpractice nor 'mere disagreement as to the proper medical treatment' present a constitutional violation." *Frierson*, at *7, *quoting Monmouth County*, 834 F.2d at 346.

                1.       Defendants' Claims

Defendants argue that "[P]laintiff is unable to satisfy the second prong of the Estelle test," as he "cannot establish that the moving defendants were deliberately indifferent to his serious medical need." Def. Br. at 32. Indeed, Defendants contend that "Plaintiff's mere belief that the treatment he was receiving was inadequate or that he should have received a particular form of treatment or received treatment sooner, is simply insufficient to establish deliberate indifference under the 42 U.S.C. § 1983 standard." *Id.* at 33.

Adding that "plaintiff received complete, regular, and medically-appropriate diagnostic

5

and clinical treatment for his medical condition," "was prescribed medication for his various complaints, received diagnostic testing and lab work to monitor his condition [and] was referred for consults with specialists such as neurologists," Defendants conclude that Mr. Mays cannot "demonstrate that defendants were 'deliberately indifferent' to his serious medical need." *Id.* at 34.  In Defendants' view, Plaintiff's claims boil down to a subjective disagreement as to the type of care he received.  *Id.*

2. Mr. Mays' Response

Mr. Mays, however, insists that he has raised a genuine issue of material fact as to whether the treatment he received at the hands of the Defendants constituted "deliberate indifference."  With respect to his allegations against Dr. Achebe, Mr. Mays submits to the Court that he repeatedly attempted to speak with the doctor during his rounds, "because [he] was not receiving his medications," but nevertheless did not receive any pain medication from June 28, 2001 to July 2, 2001, and December 23, 2003 to January 7, 2004, as "Dr. Achebe simply ignored plaintiff's medical requests and nurse flags to have [Mr. Mays'] pain medication renewed."  *Id.* at 4.  Mr. Mays also claims that he refused to seek treatment at the infirmary while being treated by Dr. Achebe in the clinic, and that "Dr. Achebe sought to punish [him for doing so] by not following the neurologist's recommended treatment of neuropathy pain . . . ."  *Id.* at 7.

Mr. Mays further contends that Dr. Talbot failed to prescribe him narcotic medication appropriate to help remedy the pain he was experiencing at the time.  Pl. Opp'n at 9.  Plaintiff submits that Dr. Talbot stated to him that "all prisoners used and abused drugs to get high" and that the doctor had been ordered to "stop all Narcotic prescriptions for pain."  *Id.*  Mr. Mays also argues that Nurse Amato aided and abetted the other defendants in their provision of medical

6

care. In particular, he claims that when faced with Mr. Mays' form complaints that nurses had not been delivering him his medication on time, Nurse Amato erroneously responded that the drugs at issue were Keep-On-Person – i.e., not nurse-dispensed. *Id.* at 12.

Finally, Mr. Mays argues that the records of his medication have been falsified, as "[e]ven when plaintiff had no order for pain medications, nurses signed Medication Administrative Records (MAR) indicating that plaintiff received such medications." Pl. Opp'n at 2. Mr. Mays also suggests that any record of his not taking prescribed medication is in fact attributable to defendants' failure to provide him with said medication . *Id.* at 3. Plaintiff concludes that these allegations raise a genuine issue of material fact as to whether Dr. Achebe, Dr. Talbot, Dr. Donkor, Nurse Amato and CMS were deliberately indifferent to his condition.

                3.      Analysis

That the medical conditions allegedly suffered by Mr. Mays qualify as "serious" under *Estelle* is not disputed by the parties. Accordingly, this Court need only assess whether there is a genuine issue of material fact as to whether Defendants were "deliberately indifferent" to Mr. Mays' condition. There remains no such issue of material fact here.

First, Mr. Mays makes much of the alleged failure by Drs. Achebe and Talbot to prescribe him the pain medication he sought . The record shows, however – and Mr. Mays does not contest – that Dr. Achebe and Mr. Talbot regularly prescribed Mr. Mays pain medication. *See* Declaration of Judson L. Hand ("Hand Decl.") Ex. B. While Mr. Mays contends that he was deprived of prescription pain-killers from December 23, 2003 to January 7, 2004, there is no evidence in the record that any lack of painkiller medication Mr. Mays may have suffered was attributable to "deliberate indifference" by the Defendants. Indeed, the record reflects that Mr.

Mays requested narcotic painkillers in December 2003, and that Dr. Talbot denied his request on December 18, noting that: "Inmate is requesting 2 more Darvocets; discussed with inmate that I will not give him any more darvocets or narcotics; his pain has inflammatory components which are better addressed with anti-inflammatory meds . . . ."  Ex. B.  As this Court has held in *Frierson*, "mere disagreement" as to the proper form of treatment does not amount to a constitutional violation.  *Frierson*, at *7; *see also Darden v. Laurie*, 193 Fed. App'x 169, 171 (3d Cir. 2006) ("Disagreements with a medical judgment cannot form the basis of an Eighth Amendment claim.").  Dr. Talbot's decision cannot therefore be deemed to constitute "deliberate indifference" to the patient's serious medical need.

Similarly, Mr. Mays' allegation that Dr. Achebe violated his constitutional rights by refusing to prescribe the pain medication suggested by his neurologist, and his allegation that Dr. Achebe denied his requests for a change in drug combination to improve his viral load, do not suggest "deliberate indifference" to Mr. Mays' plight.  Dr. Achebe was entitled, under *Frierson*, to prescribe the painkillers and anti-retroviral drugs he thought most appropriate for Mr. Mays.

Moreover, while Mr. Mays contends that he was intentionally left without painkillers when his prescription ran out on June 4, 2004, the record shows that Dr. Achebe prescribed more painkillers no later than June 10, 2004.  *See* Hand Decl. Ex. B.  Evidence of a few days' delay in renewing a prescription does not amount to evidence of deliberate indifference to a patient's condition – especially since there is no direct evidence that the doctor intentionally delayed writing a renewal prescription.  *Frierson*, at *7 (mere allegation of malpractice does not amount to constitutional violation.); *see also Horne v. United States*, No. 06-3406, 2007 U.S. App. LEXIS 5482, at *6 (3d Cir. March 7, 2007) ("claims of negligence or malpractice, without a

showing of some more culpable state of mind, do not establish deliberate indifference for purposes of an Eighth Amendment claim."), *citing Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999); *see also Gillespie v. Hogan*, 182 Fed. App'x 103, 105 (3d Cir. 2006) ("Allegations of negligent treatment are medical malpractice claims, not constitutional violations claims.").[1]

Finally, Mr. Mays' allegations that the medical staff sometimes failed to dispense the prescribed medicine to him fails to raise a genuine issue of material fact warranting the denial of summary judgment. Indeed, Mr. Mays fails once again to offer any evidence that the prescribed medicine were *deliberately* withheld from him. Even viewing all evidence offered to the Court in the light most favorable to Mr. Mays, his allegations suggest, at most, a negligent failure to dispense the drugs he sought. Evidence of such negligence cannot establish "deliberate indifference" under an Eighth Amendment analysis. *See Darden v. Laurie*, 193 Fed. App'x 169, 171 (3d Cir. 2006) ("Allegations of negligent treatment are medical malpractice claims, and do not trigger constitutional protections.").

---

[1] Indeed, the evidence suggests that Dr. Achebe renewed the prescription as soon as he personally received notice of the lack of drugs:

> Plaintiff did not receive any pain medication from December 23, 2003 to January 7, 2004. Plaintiff suffered severely over this period of time, as Dr. Achebe simply ignored plaintiff's medical requests and nurses flags to have pain medication renewed. *It was not until January 7, 2004, when Dr. Achebe received a copy of plaintiff's complaints about the medical unit in his capacity as Unit Representative that his medication was renewed.*

Pl. Opp'n at 4 (emphasis added).

### III. CONCLUSION

For the foregoing reasons, Mr. Mays has failed to raise a genuine issue of material fact as to whether Defendants Talbot, Donkor, Achebe and Amato have violated his constitutional Eighth Amendment rights. All Section 1983 claims against those defendants are therefore dismissed, and so, accordingly, are the Section 1983 claims against CMS. An appropriate form of Order accompanies this Opinion.

Dated: April 18, 2007

                 s/ Garrett E. Brown, Jr.
                 GARRETT E. BROWN, JR., U.S.D.J.